UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
 CECIL CELIA ASTUDILLO and
 BERNABE ASTUDILLO,

                                    Plaintiffs,

                   -against-                                        **REPORT AND**
                                                                    **RECOMMENDATION**
FUSION JUICE BAR INC.; FUSION BAR 3                                 19 CV 2590 (EK) (CLP)
INC.;   and   FLORENTINO   ORTEGA,
individually,

                                    Defendants.
--------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On May 2, 2019, plaintiffs Cecil Celia Astudillo and Bernabe Astudillo (collectively,

"plaintiffs") commenced this action against defendants Fusion Juice Bar Inc., Fusion Bar 3 Inc.,

and Florentino Ortega, individually, alleging violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law ("NYLL") §§ 190 and 650,

et seq., seeking, inter alia, unpaid minimum and overtime compensation under the FLSA and

NYLL, unpaid spread of hours premium under the NYLL, statutory penalties under the Wage

Theft Prevention Act, liquidated damages, prejudgment and post-judgment interest, and

attorney's fees and costs.  (Compl.[1] ¶¶ 1–2).

        Currently pending before this Court on referral from the Honorable Eric Komitee is

plaintiffs' motion for default judgment.  (ECF Nos. 33, 34, 35, 36, 37).  For the reasons set forth

below, it is respectfully recommended that plaintiffs' motion be granted and that they be

awarded $178,500 in damages, as well as pre- and post-judgment interest, and $18,338 in

attorney's fees and costs.

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed May 2, 2019.  (ECF No. 1).

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiffs allege that defendant Fusion Juice Bar Inc. ("Fusion Juice Bar Inc.") is a New York corporation, with its principal place of business located at 30-93 38th Street, Astoria, New York 11103. (Compl. ¶ 6). Defendant Fusion Bar 3 Inc. ("Fusion 3") is alleged to be a New York corporation, with its principal place of business located at 34-02 36th Avenue, Astoria, New York, 11106. (<u>Id.</u> ¶ 7). Although the entities located at these two business locations are alleged to be separate corporations, plaintiffs allege that they are engaged in related activities and share similarly situated employees. (<u>Id.</u> ¶ 15). Each corporation allegedly provides mutually supportive services to the other, shares a common business purpose, shares the services of their employees, including plaintiffs and shared control over plaintiffs. (<u>Id.</u> ¶¶ 18–20). Thus, plaintiffs allege that the two locations and entities may be considered to be a single enterprise or joint employer (<u>id.</u> ¶ 18), and as such, plaintiffs refer to them together as "Fusion Juice Bar."

Plaintiffs allege that Fusion Juice Bar was and continues to be an enterprise engaged in commerce within the meaning of the FLSA in that it has an annual gross volume of sales of at least $500,000 and has employees engaged in commerce or the production of goods for commerce or who handle, sell or otherwise move goods that have moved in commerce. (<u>Id.</u> ¶ 12).

Defendant Florentino Ortega is alleged to be the owner, general manager, officer, director and/or managing agent of Fusion Juice Bar, who participated in the day-to-day operations of Fusion Juice Bar, and who exercised control over the terms and conditions of plaintiffs' employment, including the power to hire and fire employees, to determine their rates and methods of pay, to determine work schedules and to supervise and control the plaintiffs' employment. (<u>Id.</u> ¶¶ 8, 9, 17).

According to the Complaint, from February 2018 through March 3, 2019, plaintiff Cecil Celia Astudillo ("C. Astudillo") was employed by Fusion Juice Bar, which operated as a pair of healthy fast food juice bars located at 30-93 38th Street and 34-02 36th Avenue in Astoria, New York.  (Id. ¶ 10).  Plaintiff Bernabe Astudillo ("B. Astudillo") alleges that he was employed by the Fusion Juice Bar located at 30-93 38th Street in Astoria from February 2016 through December 2018.  (Id. ¶ 11).  Plaintiffs claim that they were paid in cash and that at all relevant times, defendants knowingly and willfully failed to pay them the proper wages, including failing to pay minimum wages, and overtime wages in contravention of the FLSA and NYLL.  (Id. ¶¶ 16, 22–25).

Plaintiff C. Astudillo alleges that during her employment with defendants, she worked as a counterperson and cashier.  (Id. ¶ 27).  She worked a regular schedule of 45 hours per week, Mondays through Fridays from 7:00 a.m. to 4:00 p.m.  (Id. ¶ 29).  During this time, she was paid a flat payment of $400 per week, or an hourly rate of $10 per hour for 40 hours, with no compensation for her overtime hours over 40.  (Id. ¶¶ 30, 31).  She also claims that she did not receive any tips in connection with her employment.  (Id. ¶ 32).

Plaintiff B. Astudillo alleges that during his employment with defendants, he worked as a counterperson and general helper.  (Id. ¶ 33).  He worked a regular schedule of 60 hours per week, Mondays through Saturdays from 8:00 a.m. through 6:00 p.m.  (Id. ¶ 35).  During the last two months of his employment, plaintiff B. Astudillo worked five days a week for a total of 50 hours per week.  (Id.)  During the first period of his employment, he was paid $700 per week at an hourly rate of $17.50 per hour for 40 hours, with no compensation for overtime.  (Id. ¶ 36).  His wages were reduced to $600 per week during the last two months of his employment.  (Id. ¶ 37).  Like C. Astudillo, plaintiff B. Astudillo also did not receive tips, nor did either plaintiff

3

receive wage statements or other receipts.  (Id. ¶¶ 30, 36, 39).  Plaintiffs also allege that defendants knowingly and willfully had a policy of not paying proper overtime or minimum wages in violation of the FLSA and NYLL and had a policy of not paying spread of hours pay when plaintiffs' shifts exceeded 10 hours, in violation of NYLL.  (Id. ¶¶ 41, 42).

The Complaint sets forth three claims:  1) a violation of the FLSA for failure to pay minimum and overtime rates and failure to pay any wages for certain hours worked (Count 1); 2) a violation of the NYLL for failure to pay minimum and overtime rates, failure to pay any wages for certain hours worked, and failure to pay spread of hours premiums (Count 2); and 3) a violation of the New York State Wage Theft Prevention Act for failure to maintain accurate records and failure to provide proper written wage notices and wage statements (Count 3).

Following the filing of the Complaint on May 2, 2019, defendants filed an Answer on July 22, 2019.  (ECF No. 12).  An initial conference was held on October 2, 2019, at which time counsel for defendants was given 30 days to provide relevant records and a settlement conference was then scheduled for November 15, 2019.  On April 17, 2020, the Court held a conference at which defendants' counsel failed to appear.  Thereafter, on September 4, 2020, counsel notified the Court that he had been unable to reach his clients, and on October 8, 2020, he reported that the defendants were closing one business.

On January 8, 2021, defendants' counsel moved to withdraw and defendants were given time to respond.  (ECF Nos. 17, 18).  The Court granted the motion in a conference on February 4, 2021 and memorialized its Order on March 16, 2021, giving defendants 30 days to obtain new counsel.  (ECF No. 19).  In that Order, defendant Ortega was informed that he could proceed *pro se* but that the corporate defendant entities could not.  (Id.).  When defendants failed to appear or have counsel appear at the subsequent status conference set for April 22, 2021, the Court

4

extended the deadline to May 14, 2021, warning that a default would enter if defendants failed to appear.

On May 20, 2021, the Court issued a final warning (ECF No. 20), which plaintiffs served on defendants by United States First Class Mail and by email. (ECF No. 21). When defendants still failed to appear, this Court issued a *sua sponte* Report and Recommendation on September 21, 2021, recommending that a default enter against the defendants for failure to appear. (ECF No. 26). Plaintiffs served a copy of this Report and Recommendation on defendants (ECF No. 27), and defendants failed to object to the Report and Recommendation. The District Court then entered an Order on June 1, 2022, adopting the Report and Recommendation in its entirety and directing the entry of default and the filing of the motion for default judgment. (ECF No. 28). This motion for default judgment was then referred to the undersigned to prepare a recommendation as to damages.

On December 19, 2022, this Court issued an Order warning defendants that plaintiffs' motion for default judgment and request for damages would be decided based upon plaintiffs' submissions unless defendants requested a hearing by January 5, 2023. (ECF No. 40). Defendants were also invited to submit papers. (Id.) Plaintiffs served a copy of that Order on defendants (ECF No. 41), and this Court received nothing from defendants by January 5, 2023, nor have defendants contacted the Court since that time.

DISCUSSION

I.   Default Judgment

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ.

P. 55(a).  Rule 55 sets forth a two-part procedure for entering a default judgment.  Priestley v. Headminder, Inc., 647 F.3d 497, 504–05 (2d Cir. 2011); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993); see also Seaford Ave. Corp. v. ION Ins. Co., Inc., No. 22 CV 3449, 2022 WL 17669438, at *2 (E.D.N.Y. Dec. 14, 2022).  The court clerk first enters a default by noting the defaulting party's failure to respond or appear.  Fed R. Civ. P. 55(a).  Second, if the defaulting party then fails to successfully vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment.  Fed R. Civ. P. 55(b).  Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a referral to determine the question of damages.  See Fed. R. Civ. P. 55(b)(2).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort."  Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Court instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party."  Id.  Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it

must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that where the court enters a default judgment, it is required to "supervise default judgments with extreme care to avoid miscarriages of justice").  Accordingly, a plaintiff is not entitled to a default judgment as a matter of right, simply because the defendant is in default. See id.

Courts have significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including (1) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating:  "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); (2) "'whether the grounds for default are clearly established;'" and (3) "'the amount of money potentially involved.'"  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. 1992) (quoting 10 Charles A. Wright, et al., Federal Practice and Procedure § 2685, at 425–26 (2d ed. 1983)).  The greater the amount of money involved, the more careful a court should be in entering a default judgment.  See id.  Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (explaining that under Fed. R. Civ. P. 55(b)(2) "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action"); 10A Charles A. Wright, et al., Federal Practice and Procedure § 2685 (4th ed. 2008) (Apr. 2022 update) (discussing the aforementioned factors).

In this case, it is beyond dispute that defendants are in default since they have failed to appear at several court conferences, despite being given numerous extensions of time and warnings from the Court about the consequences of their failure to appear and retain counsel, and they have failed to challenge the Court's entry of default.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for a default judgment).  Moreover, defendants severed contact with their initial counsel and failed to obtain new counsel once Mr. Hans withdrew, despite the Court's warning that defendant corporations could not proceed *pro se*.[2]  See La Barbera v. Federal Metal & Glass Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) (holding "a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court *pro se*") (citing Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam), and Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983)), adopting report and recommendation, id. at 345–56.  Further, the amount of damages plaintiffs seek in this case is not large enough to give this Court pause.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, where plaintiff's request for damages ran "well into the millions of dollars" and plaintiff did not follow the procedure set out in Fed. R. Civ. P. Rule 55, and giving defendant an opportunity to contest the entry of default).

---

[2] Earlier in this litigation, defendants were represented by both Stephen Hans and Nils Shillito of the firm Stephen D. Hans & Associates, P.C.  Mr. Hans filed his motion to withdraw as counsel on January 8, 2021.  (ECF Nos. 17, 18).  That motion was granted at a status conference held on February 4, 2021 and then memorialized on March 16, 2021.  (ECF No. 19).  On December 21, 2022, Mr. Shillito filed a letter motion referring to the earlier motion to withdraw filed by Mr. Hans, and wrote:  "While the intent of the motion was for all attorneys associated with this firm, including both Mr. Hans and myself, to be removed as counsel for defendants, the notice of motion and accompanying declaration may not have been entirely clear on this issue."  (ECF No. 42, at 1).  On December 30, 2022, the Court granted Mr. Shillito's request to be removed from the docket, recognizing that all parties had been well aware for over a year that defendants were unrepresented.  (ECF No. 43).  The Court also Ordered the firm Stephen D. Hans & Associates, P.C. to serve a copy of the Court's Order on defendants by certified mail.  (Id.)

Despite the numerous opportunities afforded to defendants, they have neither contested the default, nor retained new counsel. Accordingly, there is no compelling reason to delay further.

## II. Plaintiffs' Claims

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; see also Vierling Commc'ns GMBH v. Stroyls, No. 09 CV 6654, 2011 WL 5854625, at *1 (S.D.N.Y. Sept. 16, 2011), report and recommendation adopted, 2011 WL 5844158 (S.D.N.Y. Nov. 21, 2011); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded"); Deshmukh v. Cook, 630 F. Supp. 956, 959–60 (S.D.N.Y. 1986). The Court, however, must review the allegations in the Complaint to determine if the elements of each claim have been adequately pleaded. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; see also Archbold v. Tristate ATM, Inc., Nos. 11 CV 5796, 12 CV 847, 2012 WL 3887167, at *3 (E.D.N.Y. Sept. 7, 2012), report and recommendation adopted, (E.D.N.Y. Mar. 15, 2013); see also Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief"), adopting report and recommendation, id. at 152–60.

### A. FLSA Claims

The first issue is whether defendants failed to pay plaintiffs the proper minimum and overtime wages due under the FLSA and NYLL. The FLSA provides that "no employer shall

employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).[3]  Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week.  Id.

To establish a claim under the FLSA, a plaintiff must prove the following:  1) the defendant is an "[e]nterprise engaged in commerce or the production of goods for commerce;" 2) the plaintiff is an "employee" within the meaning of the FLSA; and 3) the employment relationship is not exempted from the FLSA.  See Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985)); see also Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  Plaintiffs allege that defendants were "enterprises engaged in commerce" as defined by the FLSA.  (Compl. ¶¶ 12, 13).  Additionally, plaintiffs allege that the corporate defendants had an annual gross revenue of at least $500,000.  (Id. ¶ 12).  In the context

---

[3] The statute of limitations under the FLSA is two years or three years where defendants' violations of the FLSA were willful.  29 U.S.C. § 255(a).  Plaintiffs allege that defendants' violations of the FLSA were willful.  (Compl. ¶¶ 22–25).  Crediting plaintiffs then with a three-year statute of limitations, C. Astudillo's FLSA claims that accrued after February 2018 would all be timely.  Since the Complaint was filed on May 2, 2019, only B. Astudillo's FLSA claims which accrued after May 2, 2016 would be timely.

of this default, where defendants have elected not to challenge plaintiffs' claims, the Court accepts these uncontested allegations as true. Thus, the Court finds that the corporate defendants are an "enterprise engaged in commerce or in the production of goods for commerce."

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d at 1098. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).

The Complaint states that plaintiffs were employed by defendants, who, as noted above, qualify as "employers" within the meaning of the FLSA. (See Compl. ¶¶ 10, 11, 46). It follows, therefore, that plaintiffs are "employees" under the FLSA. There is nothing to suggest any basis for exempting the employment relationship at issue from the FLSA's provisions.[4] In addition, plaintiffs have alleged in their Complaint that during the period of their employment, they routinely worked more than 40 hours a week for which they received a fixed weekly pay that did not vary with the number of hours worked. (Id. ¶¶ 29–31, 35–38). Under the FLSA, the minimum wage in effect for the relevant time period was $7.25 an hour.[5] See 29 U.S.C. § 206. Plaintiff C. Astudillo alleges that she was paid $10 an hour during her employment; plaintiff B.

---

[4] See 29 U.S.C. § 213(a) setting forth the exemptions from the minimum wage requirements.
[5] Minimum wage in New York City was increased from $7.25 to $8.00 beginning in 2014. See Spotlight: Minimum Wage, Comptroller, https://comptroller nyc.gov/reports/spotlight-minimum-wage/ (last visited Mar. 20, 2023).

Astudillo alleges that he was paid $17.50 per hour and then $15 per hour during his employment. (Compl. ¶¶ 30, 36, 37).  Plaintiffs' wage rates were actually higher than the FLSA minimum wage rate prescribes.  Thus, they have not raised claims of minimum wage violations under the FLSA.  However, they allege that there were certain hours worked for which they received no pay and that they were not paid overtime as required by the FLSA.  (Id. ¶¶ 49, 50, 51). Therefore, the Court finds that plaintiffs have sufficiently set forth the necessary elements to state a claim under the FLSA.

B.  NYLL Claims

Plaintiffs also allege that defendants violated the NYLL.[6]  Like the FLSA, the NYLL establishes certain minimum wage rates and mirrors the FLSA's requirement that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of 40 hours in a week.  See N.Y. Comp. Codes R. Regs. tit. 12, §§ 146-1.2, -1.4.

To recover under the NYLL, the plaintiff must prove that he or she is an "employee" entitled to NYLL's protections and that the defendant is an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–09 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales made or business done in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined, in part, as "any individual employed or permitted to work by an

---

[6] The statute of limitations for actions under the NYLL is six years.  N.Y. Lab. Law § 663(3).  Since plaintiff C. Astudillo's NYLL claims arose in 2018 and B. Astudillo's NYLL claims arose in 2016, both plaintiffs' claims are timely and may be considered by the Court because the Complaint was filed on May 2, 2019.

employer in any occupation." N.Y. Lab. Law § 651(5). Therefore, plaintiffs fit within the definition of "employee" and defendants satisfy the definition of "employer" under the NYLL. Furthermore, there does not appear to be any exception to the definition of "employee" that applies in this case.[7]

In the Complaint, plaintiffs allege that defendants failed to pay them for all hours worked, and failed to pay the appropriate minimum wages and overtime as prescribed by the NYLL. (Compl. ¶¶ 62, 63). According to plaintiffs' Memorandum of Law, the applicable minimum wage rate under the New York Labor Law from December 31, 2015 until December 31, 2016 was $9.00 an hour. See N.Y. Lab. Law § 652; (see also Pls.' Mem. at 6). Also according to plaintiffs' Memorandum of Law, the applicable minimum wage rate under the New York Labor Law was $11.00 per hour from December 31, 2016 until December 31, 2017; $13.00 an hour after December 31, 2017 until December 31, 2018; and increased to $15.00 per hour on and after December 31, 2018. See N.Y. Lab. Law § 652; N.Y. Comp. Codes. R. & Regs. tit. 12 § 146-1.2; (see also Pls.' Mem. at 6).

From February 2018 until March 2019, plaintiff C. Astudillo alleges that she was paid $10 an hour during her employment. (Compl. ¶ 30). From February 2016 until October 2018, plaintiff B. Astudillo alleges that he was paid $17.50 per hour and then from October until December 2018, he was paid $15 per hour. (Id. ¶¶ 36, 37). Plaintiff C. Astudillo has raised a claim for unpaid minimum wages under the NYLL, but since B. Astudillo was always paid at a rate higher than the applicable minimum wage, he has not asserted minimum wage claims. Both plaintiffs, as previously mentioned, raised claims for unpaid regular and unpaid overtime wages under the NYLL.

---

[7] See N.Y. Lab. Law § 651(5) (defining the exceptions).

In addition, under the NYLL, an employer is required to provide an additional hour of pay at minimum wage for each day that the employee works for more than ten hours ("spread of hours" wages).  See 12 N.Y.C.R.R. § 146-1.6.  Plaintiffs allege that they were not paid a spread of hours premium for each day worked greater than ten hours a day.  (Compl. ¶ 64).[8]  These uncontroverted allegations are accepted by the Court as true for purposes of evaluating the sufficiency of the Complaint.  The Court, therefore, respectfully recommends that judgment be entered against defendants on plaintiffs' NYLL claims.

C.  Single Employer Doctrine

Plaintiffs seek to hold all three defendants jointly and severally liable for all violations of the FLSA and NYLL on the grounds that although the two corporate entities are separate corporations or business entities, they engage in related activities – namely, operating two juice bars in multiple locations in Queens.  (Compl. ¶ 15).  Not only do the corporate entities allegedly share employees and share a common commercial business practice, but they provide mutually supportive services to the substantial advantage of the other such that they are operationally interdependent on each other.  (Id. ¶¶ 18–20).  As such, plaintiffs assert that they should be "treated as a single enterprise and/or joint employer."  (Id. ¶ 18).  In addition, plaintiffs allege that defendant Ortega is the owner, general manager, director and/or managing agent of both entities, responsible for exercising control over the terms and conditions of plaintiffs' employment.  (Id. ¶¶ 8, 9).

The FLSA and the NYLL allow for multiple different entities to be treated as a single employer where, despite nominal differences, the entities are "part of a single integrated enterprise."  Perez v. Westchester Foreign Autos., Inc., No. 11 CV 6091, 2013 WL 749497, at *7

---

[8] Here, plaintiffs mistakenly cite to the provision of the New York State Department of Labor Regulations that is not specific to hospitality workers.

(S.D.N.Y. Feb. 28, 2013); see also Canelas v. A'Mangiare Inc., No. 13 CV 3630, 2015 WL 2330476, at *6 (S.D.N.Y. May 14, 2015) (applying the "single integrated enterprise" test to claims under the NYLL). Such a finding allows all entities to be held responsible for the FLSA and NYLL violations of any one entity. See Perez v. Westchester Foreign Autos., Inc., 2013 WL 749497, at *6–7; Canelas v. A'Mangiare Inc., 2015 WL 2330476, at *6. To establish single employer liability, courts employ a four-factor test, analyzing the extent of: "(1) the interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Juarez v. 449 Rest. Corp., 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). The inquiry is highly fact-specific and requires courts to look at the totality of circumstances "in light of economic reality." Marin v. Apple-Metro, Inc., No. 12 CV 5274, 2014 WL 11035376, at *5 (E.D.N.Y. July 29, 2014); see also Perez v. Westchester Foreign Autos., Inc., 2013 WL 749497, at *6–7.

Here, given that the Court must accept all of plaintiffs' factual allegations as true, the Court finds that plaintiffs have adequately established that the two Fusion Juice Bar entities, along with Florentino Ortega, constitute a single employer under the law. The Complaint alleges that both entities are involved in the same industry, are located near each other in Queens, are "operationally interdependent of each other," "acted in the interest of each other with respect to employees," violated both the NYLL and FLSA in a similar manner, and are owned, operated and managed by defendant Ortega. (Compl. ¶¶ 6–8, 15, 17–25). Similarly, plaintiffs allege that defendant Florentino "participated in the day-to-day operations" of the entities, controlled the rates and methods of pay, determined work schedules, and had the power to hire and fire employees. (Id. ¶¶ 8, 9, 17).

The Court finds this level of detail, in the context of a default, sufficient to establish that all defendants were a single employer for purposes of liability under the FLSA and the NYLL. Accordingly, the Court respectfully recommends that all defendants be held jointly and severally liable for all FLSA and NYLL violations.

III.    Damages

Having found that defendants constitute a "single employer" for purposes of the FLSA, and all are liable for damages flowing from FLSA violations on or after May 2, 2016 and for damages flowing from NYLL violations on or after May 2, 2013, the Court now must determine whether plaintiffs have established their damages to a "'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  While a defendant's failure to pay minimum wages and overtime violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted."  Gonzales v. Gan Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014), adopting report and recommendation, id. at *2–22.  Courts will thus award damages under whichever statute would allow for greater recovery.  Id.[9]

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992) (explaining a plaintiff "'could only recover those damages arising from the acts and injuries pleaded and in this sense it was [plaintiff's] burden to show proximate cause'") (internal quotation marks omitted) (quoting Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d

---

[9] Given that the NYLL has a longer statute of limitations than the FLSA and that the minimum wage rates under the NYLL were uniformly higher than the federal minimum wage rate of $7.25 in effect during the period of plaintiffs' employment, the Court is recommending an award under the NYLL because it provides for a greater degree of recovery.

Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973)). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. Id. at 158; Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 83; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (collecting cases); 10A Charles A. Wright, et al., Federal Practice and Procedure § 2688.1 (4th ed. 2008) (Apr. 2022 update) (explaining that "[o]nce the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). However, the plaintiff still must prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; see also Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009). "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Parris v. Pappas, 844 F. Supp. 2d 271, 274 (D. Conn. 2012) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

## A.  Plaintiffs' Evidentiary Support For Damages

In support of their request for damages each plaintiff has submitted an affidavit setting forth the basis for their claim for damages. (C. Astudillo Aff.;[10] B. Astudillo Aff.;[11]). In addition, counsel prepared damages charts for plaintiffs based on their sworn affidavits and the Complaint. (See Cooper Decl.[12] ¶¶ 6, 7, Exs. D, E).

In her Affidavit, plaintiff Cecil Astudillo states that she worked at both Fusion Juice Bar locations, beginning on or about February 3, 2018 and ending on or around March 3, 2019. (C.

---

[10] Citations to "C. Astudillo Aff." refer to the Affidavit of Cecil Celia Astudillo, dated July 28, 2022. (ECF No. 34).
[11] Citations to "B. Astudillo Aff." refer to the Affidavit of Bernabe Astudillo, dated July 28, 2022. (ECF No. 35).
[12] Citations to "Cooper Decl." refer to the Declaration of Peter H. Cooper, Esq. in Support of Motion for Default Judgment, dated July 28, 2022. (ECF No. 36).

Astudillo Aff. ¶ 3).  According to her Affidavit, she worked at the counter and the cash register, and she took orders.  (<u>Id.</u> ¶ 6).  She represents that she handled products and goods that traveled interstate.  (<u>Id.</u>)  According to her Affidavit, she worked approximately 45 hours per week, with a schedule of Monday through Friday from 7:00 a.m. until 4:00 p.m.  (<u>Id.</u> ¶ 7).  She took no breaks and represents that there was no method for recording her hours until close to the very end of her employment when the employees began to punch a clock.  (<u>Id.</u> ¶¶ 8–9).

She asserts that throughout her employment, she was paid less than the minimum wage, receiving a flat salary of $400 per week.  (<u>Id.</u> ¶ 10).  She did not receive tips, and she never received a wage statement or saw a poster providing information about the wage and hour laws. (<u>Id.</u> ¶¶ 11, 12).

Plaintiff Bernabe Astudillo also submitted an Affidavit in which he states that he was employed at the Fusion Juice Bar located at 30-93 38th Street in Astoria, beginning in February 2016 and ending on or around December 12, 2018.  (B. Astudillo Aff. ¶ 3).  He represents that his job at the Fusion Juice Bar was to make sandwiches, make smoothies, stock items, wash dishes and clean, and that during the course of his employment, he handled food and cleaning supplies that traveled interstate.  (<u>Id.</u> ¶ 6).  He avers that he generally worked Mondays through Saturdays, 8:00 a.m. through 6:00 p.m. each day, for approximately 60 hours per week.  (<u>Id.</u> ¶ 7). During the last eight weeks of his employment, his schedule was reduced by one day so that he was only working for a total of 50 hours per week.  (<u>Id.</u>)  Like his co-plaintiff, he claims that he did not take a break and that there was no manner of recording hours worked, such as a time clock.  (<u>Id.</u> ¶ 8).

His affidavit states that he was paid a flat rate of $700 per week in cash for all hours worked, until the last approximately two months of his employment when he received $600 per

week.  (Id. ¶¶ 9–10).  He did not receive any tips, never received a wage statement, and never

saw any poster or documentation providing information about minimum wages or overtime laws.

(Id. ¶¶ 10–11).

> B.  Presumption As to Hours Worked

As an initial matter, plaintiffs' Affidavits and submissions as to their hours worked and

rates of pay received are a sufficient basis for this Court to recommend an award of damages,

even in the absence of further documentation.  Under the FLSA, an employee-plaintiff generally

"'has the burden of proving that he performed work for which he was not properly

compensated.'"  Santillan v. Henao, 822 F. Supp. 2d 284, 293–94 (E.D.N.Y. 2011) (quoting

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)), adopting report and

recommendation, id. at 289–301.  The Supreme Court in Anderson v. Mt. Clemens Pottery Co.

noted, however, that "[e]mployees seldom keep . . . records [of hours worked] themselves; even

if they do, the records may be and frequently are untrustworthy."  328 U.S. at 687.  By

defaulting, defendants have "deprived the plaintiff[s] of the necessary employee records required

by the FLSA, thus hampering plaintiff[s'] ability to prove [their] damages."  Santillan v. Henao,

822 F. Supp. 2d at 294.  In default cases, "'an employee has carried out his burden if he proves

that he has in fact performed work for which he was improperly compensated and if he produces

sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

inference.'"  Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting

Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687), abrogated on other grounds, Slayton v.

American Express Co., 460 F.3d 215 (2d Cir. 2006).

In light of this holding, courts in this Circuit have held that where a defendant-employer

defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone."  Doo

Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act."  Boyke v. Superior Credit Corp., No. 01 CV 290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (explaining that the Supreme Court has held that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record keeping) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687).

New York law also requires that employers keep various, detailed employment records. New York Labor Law § 196-a(a) requires that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements."   N.Y. Lab. Law § 196-a(a); see also Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (explaining in the context of a summary judgment motion that where an employer's records are inadequate and the employee meets her burden of proof, "[t]he burden then shifts to the employer to prove by a preponderance of the evidence that plaintiff was properly paid for the hours worked") (citing N.Y. Lab. Law § 196-a(a)).  Additionally, employers are required to keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information.  See N.Y. Lab. Law § 195(1) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other"); N.Y. Lab. Law § 195(2) (requiring employers

to notify employees in writing of any changes in frequency or rate of payment seven days prior to the change taking effect); N.Y. Lab. Law § 195(3) (employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; . . . and net wages"); N.Y. Lab. Law § 195(4) (requiring employers to "establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records showing for each week worked the hours worked; the rate or rates of pay and basis thereof, . . . ; gross wages; deductions; . . . and net wages for each employee").

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiffs' "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (collecting cases), report and recommendation adopted, (S.D.N.Y. Feb. 26, 2004); see also Guallpa v. N.Y. Pro Signs, No. 11 CV 3133, 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014), recommendation and report adopted, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).  Here, since defendants have chosen to default and have failed to present any evidence to dispute the number of hours allegedly worked by the plaintiffs, the presumption as to plaintiffs' claim of hours worked applies.  Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 624 (S.D.N.Y. 1998), adopting report and recommendation, id. at 623–26; see also Reich v. Southern New Eng. Telecomm. Corp., 121 F.3d 58, 69 (2d Cir. 1997).

C.  Calculation of Overtime and Minimum Wages

Plaintiffs claim not only that they are owed overtime wages, but also that they never received adequate minimum wages or pay for all hours worked.

1.  Minimum Wage

First, the Court must determine how much each plaintiff is entitled to recover for unpaid minimum wages under the NYLL.  To arrive at the amount owed, plaintiffs first computed their hourly rates by dividing their weekly pay by the total number of hours worked each week up to 40 pursuant to the New York Hospitality Order.  See N.Y. Comp Codes R. & Regs. tit. 12, § 146-1.4.

a)    Cecil Celia Astudillo

From the beginning of her employment in February 2018 until March 2019, C. Astudillo was paid at the rate of $400.00 a week.  (C. Astudillo Aff. ¶¶ 3, 10).  This translates to an hourly rate of $10.00 per hour.  (Id. ¶¶ 7, 10 (stating that she was paid $400 per week and worked approximately 45 hours per week)).[13]  Although this rate was above the federal minimum wage rate of $7.25 an hour, it was below the minimum wage rate applicable in New York, which was $13.00 per hour in 2018 and $15.00 per hour on and after December 31, 2018.  See 29 U.S.C. § 206(a)(1)(C); N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2.  Thus, for every hour worked until December 31, 2018, plaintiff should have received an additional $3.00, and for every hour worked thereafter, she should have received an additional $5.00.

Plaintiff claims that she worked for defendants beginning on or about February 3, 2018.[14] Crediting her claim that she worked at least 40 hours per week on Mondays through Fridays, from February 3, 2018 until December 31, 2018, or approximately 47 weeks, she is owed

---

[13] According to her Affidavit, plaintiff claims that she never received tips, and that she did not take breaks.  (C. Astudillo Aff. ¶¶ 8, 10).

[14] C. Astudillo alleges in the Complaint and in her Affidavit that she only worked Mondays through Fridays. (Compl. ¶ 29; C. Astudillo Aff. ¶ 7).  Since February 3, 2018 was a Saturday, her first day of work was likely Monday February 5, 2018.  While it could have been the Friday before – namely, February 2, 2018 – plaintiff has not advanced that argument and therefore, the Court has awarded her damages based on her starting work the first weekday following February 3, 2018.

22

$5,640[15] in unpaid straight time minimum wages for the year 2018.  Plaintiff also claims that she worked until March 3, 2019[16] or approximately 9 weeks, working at least 40 hours per week. Since the applicable New York minimum wage rate was $5.00 higher than plaintiff's hourly rate, plaintiff is owed an additional $1,800[17] for unpaid straight time minimum wages after December 31, 2018.  In total, plaintiff C. Astudillo is owed $7,440 in unpaid straight time minimum wages over the entire period of her employment.

       b)   <u>Bernabe Astudillo</u>

From the beginning of his employment in February 2016 until December 12, 2018, B. Astudillo was paid at the rate of $700.00 a week, except for the last eight weeks of his employment when he worked only five days a week and was paid $600.00 a week.  (B. Astudillo Aff. ¶¶ 3, 9).  This translates to an hourly rate of $17.50 per hour for the first period of his employment and $15.00 per hour for the last two months.  (<u>Id.</u> ¶¶ 7, 9 (stating that he worked at least 60 hours per week and was paid $700 per week for the first period of employment and then had his hours reduced to 50 hours and was paid at the rate of $600 a week during the last eight weeks of employment)).[18]  Since these rates were above the federal minimum wage rate of $7.25 an hour, and either at or above the minimum wage rates applicable in New York, which were $9.00 an hour until December 31, 2016, $11.00 an hour until December 31, 2017, $13.00 per hour until December 31, 2018 and $15.00 per hour thereafter, plaintiff B. Astudillo was

---

[15] This figure is the product of the number of weeks worked (47), times 40 hours per week, times the difference between what plaintiff was paid and the applicable minimum wage, which was $3.00 an hour higher, for a total of $5,640.

[16] C. Astudillo alleges in the Complaint and in her Affidavit that she only worked Mondays through Fridays. (Compl ¶ 29; C. Astudillo Aff. ¶ 7).  Since, March 3, 2019 was a Sunday, her last day of work was likely March 1, 2019.

[17] This figure is the product of the number of weeks worked (9), times 40 hours per week, times the difference between what plaintiff was paid and the applicable minimum wage, which was $5.00 higher for a total of $1,800.

[18] According to his Affidavit, plaintiff claims that he never received tips, and that he did not take a break.  (B. Astudillo Aff. ¶¶ 8, 9).

consistently paid above the minimum wage and is not entitled to any additional amounts in unpaid straight time. See 29 U.S.C. § 206(1)(C); N.Y. Lab. Law § 652.

## 2. Overtime Payments

Plaintiffs were also entitled to recover overtime payments at a rate of 1.5 times their regular hourly rate or the applicable minimum wage rate, whichever was greater, for each hour worked over forty hours in any workweek. Both plaintiffs claim that they received no pay whatsoever for hours worked over 40 in a workweek. Thus, they would be entitled to receive time and a half for every hour worked over 40 in a week.

Under the FLSA, a workweek is "a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods." 29 C.F.R. § 778.105. The NYLL uses the same definition. See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.11 (defining a "week of work" as "a fixed and regularly recurring period of 168 hours - 7 consecutive 24 hour periods").

### a)    C. Astudillo Overtime Pay

Plaintiff C. Astudillo contends that she worked approximately 45 hours per week each week of her employment. (C. Astudillo Aff. ¶ 7). Since she should have been paid at the minimum rate applicable in New York during the periods of her employment, she should have received overtime pay at the rate of $19.50 per hour for the overtime worked up until December 31, 2018, and $22.50 per hour for the overtime worked on December 31, 2018 and after.[19] Since she worked 47 weeks before December 31, 2018, her unpaid overtime is calculated by multiplying 47 weeks, times 5 hours of overtime per week, times the applicable rate of $19.50 per hour for a total of $4,582.50. After December 31, 2018, she worked 9 weeks, times 5 hours

---

[19] These rates represent the applicable hourly rate plus half for each period.

of overtime per week, times the applicable rate of $22.50 per hour for a total of $1,012.50. Thus, in total, plaintiff C. Astudillo is entitled to receive $5,595 in unpaid overtime.

When her unpaid minimum wages are added together with her unpaid overtime wages, plaintiff C. Astudillo is owed a total of $13,035 in unpaid wages.

       b)    B. Astudillo Overtime Pay

Plaintiff B. Astudillo contends that he worked approximately 60 hours per week each week of his employment with the exception of the last eight weeks of employment when he worked 50 hours per week. (B. Astudillo Aff. ¶ 7). For that first period of employment, when he was paid $700 per week, B. Astudillo should have received an overtime rate of $26.25 per hour. For that second period of employment, when he was paid $600 per week, B. Astudillo should have received an overtime rate of $22.50 per hour. Thus, for the first period, when plaintiff worked 20 hours per week in overtime, plaintiff is owed an additional $525 per week in overtime pay. Since he worked a total of 142[20] weeks in that first period of employment, he is owed $74,550. Since B. Astudillo says he ended work on or about December 12, 2018, B. Astudillo's last week of work was likely only two full days of work. So, for that last period of employment, 7 full weeks and two days, B. Astudillo worked, he is owed $1,665. In total, plaintiff B. Astudillo is owed $76,215[21] in unpaid overtime pay.

Crediting plaintiffs' representations as to hours worked and pay received, and having reviewed plaintiffs' calculations, the Court respectfully recommends that plaintiff C. Astudillo

---

[20] According to Mr. Cooper's damages calculations, B. Astudillo started work in the 6th week in 2016, or on February 1, 2016. Therefore, B. Astudillo worked 48 full weeks in 2016. (Cooper Decl. Ex. E). According to the damages calculations, B. Astudillo worked 52 weeks in 2017 and 42 weeks in 2018 while being paid $700 per week. (Id.)

[21] In his damages calculations, Mr. Cooper credits B. Astudillo with working a full week of work in his final week of employment. (See Cooper Decl., Ex. E). However, December 12, 2018 was a Tuesday so it appears B. Astudillo only worked two full days in this final week. Therefore, plaintiffs' damages estimate is $135, or three days of overtime pay, higher than what is recommended here.

be awarded $13,035 in unpaid wages and that plaintiff B. Astudillo be awarded $76,215 in unpaid wages.

    D.  Spread of Hours Pay Under the NYLL

In the Complaint, plaintiffs seek to recover unpaid spread of hours pay, pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.  (Compl. ¶¶ 64, 65).[22]  "'New York law requires an employer to pay an employee for one additional hour at the minimum hourly wage for any day in which the employee works over ten hours.'"  Jaramillo v. Banana King Rest. Corp., No. 12 CV 5649, 2014 WL 2993450, at *4 (E.D.N.Y. July 2, 2014) (quoting Siemieniewicz v. CAZ Contracting Corp., No. 11 CV 704, 2012 WL 5183375, at *12 (E.D.N.Y. Sept. 21, 2012), report and recommendation adopted as modified, 2012 WL 5183000 (E.D.N.Y. Oct. 18, 2012)), adopting report and recommendation, id. at *1–9 (applying the general spread of hours provision); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.  Section 663 of the NYLL expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise owed to him or her under the statute.  See Santillan v. Henao, 822 F. Supp. 2d at 293; N.Y. Lab. Law § 663(1).

Although plaintiffs alleged in the Complaint that they were not paid spread of hours pay for all days in which they worked more than 10 hours per day, they appear to have abandoned this claim in their motion for default judgment and have not included any calculations for either plaintiff in spread of hours damages.  (See Cooper Decl., Exs. D, E).  Accordingly, this Court has not recommended an award of spread of hours pay for either C. Astudillo or B. Astudillo.

---

[22] See supra note 8.

### E.  Liquidated Damages Under the FLSA and NYLL

In addition to compensatory damages, plaintiffs seek liquidated damages.  Liquidated damages are available under both federal and state law.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).

Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the. . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA.  29 U.S.C. § 260.

Under the NYLL, an employee is also entitled to liquidated damages "equal to one hundred percent of the total of such underpayments found to be due," unless the employer proves a good faith basis for believing he or she was in compliance with the law.  N.Y. Lab. Law § 663(1).  Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (citing Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  After November 24, 2009, "an amendment to the NYLL . . .  'incorporated the federal standard' and shifted the burden of proving good faith to the employer."  Id. (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d at 317).  The employer's burden of proving good faith "'is a difficult one, with double damages being the norm and single damages the exception.'"  Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132,

142 (2d Cir. 1999)). "While an award of duplicative liquidated damages under the FLSA and NYLL . . . is prohibited, courts within this Circuit have allowed recovery under the statute that provides the greatest relief." De Jesus v. Sea Crest Diner-Rest., No. 17 CV 275, 2018 WL 3742778, at *10 (E.D.N.Y. May 7, 2018) (internal citation and footnote omitted) (citing Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018)), report and recommendation adopted, 2018 WL 6418893 (E.D.N.Y. Dec. 6, 2018); see also id. at n.7 (explaining that the Second Circuit in Rana v. Islam did not reach the question of whether a plaintiff is always entitled to the greater of the liquidated damages award as between the NYLL and FLSA).

Here, defendants have defaulted and therefore have not offered any evidence that their inadequate minimum wage and overtime payments were carried out with a good faith belief that their compensation practices were in compliance with either federal or state law. Thus, this Court finds defendants liable for the liquidated damages. Accordingly, it is respectfully recommended that plaintiffs be awarded liquidated damages under the NYLL,[23] in the amount of $13,035 for C. Astudillo and $76,215 for B. Astudillo.

### F.    Rate of Pay Notification and Wage Statements Under the NYLL

Like spread of hours pay, the Complaint seeks damages due to defendants' alleged failure to provide written wage notices in violation of N.Y. Lab. Law §§ 195 and 198. (See Compl. ¶¶ 67–74). However, plaintiffs seem to have abandoned this claim by not raising it in connection with the motion for default judgment and for not including any calculations for such damages in its damages analysis. (See Cooper Decl., Exs. D, E).

---

[23] Given that this Court recommends an award of compensatory damages under the NYLL because it allows for a greater recovery in this context than the FLSA, see supra note 9, this Court also recommends an award of liquidated damages under the NYLL.

Thus, the Court is not recommending any award of damages for defendants' alleged violation of the Wage Theft Prevention Act, N.Y. Labor Law §§ 195(1)(a), (3). See N.Y. Lab. Law §§ 198(1-b), (1-d).[24]

G. Pre-Judgment Interest

Finally, plaintiffs seek to recover prejudgment interest on all damages awarded under the NYLL, calculated at a rate of 9% per annum pursuant to New York law. See N.Y. C.P.L.R. 5004. The Second Circuit has held that, as liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999); see also de los Santos v. Marte Constr., Inc., No. 18 CV 10748, 2020 WL 8549054, at *6 (S.D.N.Y. Nov. 25, 2020) (explaining that although "[u]nder the FLSA, pre-judgment interest may not be awarded in addition to liquidated damages[,] New York . . . allows for recovery for both, though the interest is computed based on actual, not liquidated, damages only") (internal citations omitted), report and recommendation adopted, 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020)).[25]

Accordingly, plaintiffs are entitled to prejudgment interest on the following damages: (1) C. Astudillo's unpaid minimum and overtime wages that are owed for the period from

---

[24] Since plaintiffs no longer pursue their claims related to the wage statements and notices, this Court does not pass on whether or not plaintiffs have sufficient standing to bring those claims. See Francisco v. NY Tex Care, Inc., No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (holding that plaintiff had insufficiently pled an "injury" flowing from the lack of wage statements and notices "and the Supreme Court has made clear that a statutory violation alone, without a tangible injury or close parallel to a traditional cause of action, does not constitute an injury that can be recognized by the federal courts") (citing TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021)).
[25] Where plaintiffs receive damages under both the FLSA and the NYLL, prejudgment interest accrues on any amounts for which liquidated damages are not awarded under the FLSA; pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA. See Santillan v. Henao, 822 F. Supp. 2d at 298. Here, because the Court is recommending an award of damages under the NYLL only, plaintiffs are entitled to prejudgment interest on all their compensatory damages.

February 2018 to March 3, 2019; and (2) B. Astudillo's unpaid overtime wages that are owed for the period from February 2016 through December 2018.

Where, as here, violations of the NYLL occur over an extended period of time, courts have discretion to calculate prejudgment interest from "a single reasonable intermediate date." N.Y. C.P.L.R. 5001(b); see de los Santos v. Marte Constr., Inc., No. 2020 WL 8549054, at *7. "'[I]nterest is calculated using the simple . . . [rather than] a compounded rate.'" de los Santos v. Marte Constr., Inc., No. 2020 WL 8549054, at *7 (quoting Fermin v. Las Delicas Peruanas Rest., Inc., 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015), adopting report and recommendation, id. at 24–54). Although plaintiffs have not specified a date from which they seek prejudgment interest on their damages under the NYLL, leaving it to the court, they suggest that the court select a single reasonable intermediate date two years prior to judgment as the date from which interest should run.  (Pls.' Mem. at 8).  The Court instead opts to select a midpoint in each of the plaintiffs' periods of employment.  See Cabrera v. Canela, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (explaining that "[t]he midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest"), adopting report and recommendation, id. at 174–87; De Jesus v. Sea Crest Diner-Rest., 2018 WL 3742778, at *10–11 (selecting as a "single reasonable intermediate date" the midpoint between plaintiff's first and last days of employment).

For C. Astudillo, using the Court-adjusted dates of employment, her employment with defendants spanned from February 5, 2018 until March 1, 2019.  The midpoint of her employment was August 18, 2018.[26]  Her *per diem* interest rate is $3.21.[27]  If her prejudgment

---

[26] There are 389 days between February 5, 2018 and March 1, 2019.  August 18, 2018 is 194 days after February 5, 2018.

[27] (13,035 (principal amount) * .09 (statutory interest rate))/ 365 = $3.21

interest ran from August 18, 2018 until the date of this Report and Recommendation, she would be owed $5,386.68[28] in prejudgment interest.

For B. Astudillo, his employment with defendants spanned from February 2016 until December 12, 2018.  The Court selects July 7, 2017 as his midpoint date.[29]  His *per diem* interest rate is $18.79.[30]  If his prejudgment interest ran from July 8, 2017 until the date of this Report and Recommendation, he would be owed $39,177.15[31] in prejudgment interest.

The Court respectfully recommends that the plaintiffs recover any additional interest from the date of this Report and Recommendation until the date of judgment at their respective per diem rates.

### H. Attorney's Fees and Costs

Plaintiffs seek to recover an award of reasonable attorney's fees and costs pursuant to applicable provisions of the FLSA and the NYLL.  (Pls.' Mem. at 8–9); see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Courts in this Circuit determine the "presumptively reasonable fee" by multiplying the number of hours reasonably expended on litigation by an hourly rate that a reasonable, paying client would be willing to pay.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 189–90 (2d Cir. 2008); Jemine v. Dennis, 901 F. Supp. 2d 365, 391–92 (E.D.N.Y. 2012) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)) (collecting cases), adopting report and recommendation, id. at 372–94; Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07 CV 319, 2010 WL 2539771, at *1–2 (E.D.N.Y. Mar. 15, 2010).  In order to reach this number, "courts look to the 'rates prevailing in

---

[28] There are 1,678 days from August 18, 2018 until March 23, 2023. 1,678 * 3.21 = 5,386.68
[29] There are 1,045 days between February 1, 2016 and December 12, 2018.  July 7, 2017 is 522 days after February 1, 2016.
[30] (76,215 (principal amount) * .09 (statutory interest rate))/365 = $18.79
[31] There are 2,085 days from July 7, 2017 until March 23, 2023. 2,085 * 18.79 = 39,177.15

the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" Jemine v. Dennis, 901 F. Supp. 2d at 392 (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994)).

Although courts retain broad discretion in awarding fees, Peralta v. M & O Iron Works, Inc., No. 12 CV 3179, 2014 WL 988835, at *13 (E.D.N.Y. Mar. 12, 2014), adopting report and recommendation, id. at *1–15, "[t]he Second Circuit has explained that the 'community' to which the district court should look is the district in which the district court sits." Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723, 725 (E.D.N.Y. 2009) (citing Arbor Hill Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190). Plaintiffs bear the burden of proving the reasonableness of requested fees, "preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 94 (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983)). Additionally, among the "'critical ingredients in determining a reasonable hourly rate'" are the "'nature of representation and type of work involved in a case.'" Jemine v. Dennis, 901 F. Supp. 2d at 392 (internal quotation marks omitted) (quoting Arbor Hill Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184 n.2). Courts in this Circuit are guided by: "(1) rates awarded in prior cases; (2) the court's own knowledge of prevailing rates in the district; and (3) evidence submitted by the parties." Santillan v. Henao, 822 F. Supp. 2d at 300 (citing Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005)).

In accordance with the requirements set out in New York State Association for Retarded Children, Inc. v. Carey, plaintiffs' counsel has provided a detailed time record of the tasks performed in this case, along with corresponding fee rates based on the employee who performed

the tasks. (See Cooper Decl., Ex. F). Plaintiffs' counsel requests attorney's fees and costs in the amount of $19,473. (Pls.' Mem. at 8–9).

Plaintiffs' counsel's billing records demonstrate that the vast majority of the work was performed by attorney, Peter H. Cooper, of the firm of Cilenti & Cooper, PLLC. (Cooper Decl., Ex. F). Mr. Cooper was admitted to the Southern District of New York in July 1997 and seeks a rate of $400 per hour. (See Pls.' Mem. at 8–9). In addition, there appears to be one entry on the billing records from someone with the initials "MC," who attended the initial meeting with the client for 1.5 hours and charged at the rate of $100 per hour. No additional information about this person was provided to the Court and it is unclear if MC is an attorney or paralegal or other.

1. Hourly Rates

According to materials submitted on behalf of plaintiffs, Mr. Cooper charges an hourly rate of $400. (Cooper Decl., Ex. F). Mr. Cooper has had approximately twenty-five years of experience as a licensed and practicing attorney in New York. (Pls.' Mem. at 8–9). Analysis of cases in this district counsel the Court to reduce Mr. Cooper's hourly rate from $400 to $375 an hour. See, e.g., Santos v. Cancun & Cancun Corp., No. 21 CV 192, 2022 WL 1003812, at *9 (E.D.N.Y. Feb. 17, 2022) (recommending a reduction in Mr. Cooper's requested hourly rate from $400 to $375 because the case, a wage and hour default, was relatively straightforward and "[f]or FLSA cases in this district, rates of $400 per hour or higher have generally been reserved for attorneys with more experience than Mr. Cooper"), report and recommendation adopted, (E.D.N.Y Mar. 31, 2022);[32] Fermin v. Las Delicas Rest., Inc., 93 F. Supp. 3d at 52 (reducing the hourly rate of Giustino Cilenti, a principal at Cilenti & Cooper, from $400 to $350); Cuevas v.

---

[32] Although judgment in this case was entered by the Clerk of Court (see Dkt. No. 21 CV 192, ECF No. 21); the defaulting defendant later appeared and filed a motion to vacate the judgment. (See Dkt. No. 21 CV 192, ECF No. 23). Thereafter, the motion to vacate was withdrawn and judgment was satisfied. (See Dkt. No. 21 CV 192, ECF No. 39).

Ruby Enters. of N.Y. Inc., No. 10 CV 5257, 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) (reducing the hourly rate of Mr. Cilenti and Mr. Cooper from $400 to $350); Santillan v. Henao, 822 F. Supp. 2d at 300 (reducing a proposed hourly rate of a managing attorney who wrote and taught employment law in an employment law case from $450 to $375 where the "nature of the work performed in this matter was relatively straightforward, particularly since the defendants defaulted"); Concrete Flotation Sys, Inc. v. Tadco Constr. Corp., 2010 WL 2539771, at *4–5 (reducing proposed hourly rates for attorney's fees to $350 an hour for partners and $250 an hour for associates based on comparable awards in EDNY).

Therefore, this Court respectfully recommends that fees be calculated based on a rate of $375 per hour for Mr. Cooper.  As for the 1.5 hours charged for "MC," the Court has no information on which to evaluate whether the hourly rate of $100 is appropriate or not for this person and therefore, recommend that plaintiffs' request for compensation for these 1.5 hours of work not be granted.

## 2. Hours Expended

According to plaintiffs' Memorandum of Law, Mr. Cooper seeks $19,473 in fees and costs.  (Pls.' Mem. at 8-9; see also Cooper Decl., Ex. F).  In reviewing Mr. Cooper's timekeeping records, the Court calculates that the total number of hours expended on this matter was 48.9.[33] However, as noted, Mr. Cooper has included in his request $150 for 1.5 hours of work performed by "MC," who has not been identified and for whom the Court lacks the necessary information to evaluate the reasonableness of their hours and hourly rate.  (See Cooper Decl., Ex. F). Subtracting those 1.5 hours from the total leaves 47.4 hours of time expended by Mr. Cooper on

---

[33] Of note, in the Memorandum of Law, plaintiff writes that "Cilenti & Cooper, PLLC incurred over 60 hours of attorney time."  (Pls.' Mem. at 8).  This seems to be a typographical error as it does not correspond to counsel's own records or calculations.

the matter.  At Mr. Cooper's requested rate of $400 per hour, plaintiffs' total fee award would amount to $18,960.[34]  As previously mentioned, the Court recommends that Mr. Cooper's rate be adjusted to $375 per hour, and so, at the Court's recommended rate, the total fee award would amount to $17,775.

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'"  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)), report and recommendation adopted, (S.D.N.Y. Aug. 9, 2012).  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  In this Circuit, judges are required to "'use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'"  Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 208 (E.D.N.Y. Nov. 30, 2007) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

As a preliminary matter, this Court finds that counsel's submission of time records sufficiently meets the Second Circuit's requirements, according to which "'all applications for attorney's fees [must] be supported by contemporaneous records.'"[35]  Alejo v. Darna Rest., No. 09 CV 5436, 2010 WL 5249383, at *6 (S.D.N.Y. Dec. 17, 2010) (quoting Scott v. City of New

---

[34] The discrepancy between this number and the award of $19,473 discussed in the Memorandum of Law is that the award in the Memorandum of Law included costs, which are discussed elsewhere in this Report and Recommendation, the $150 for "MC," and several mathematical errors.

[35] See supra note 34.  Some entries in the timekeeping records appear to have a typographical error suggesting this matter was venued in SDNY.  These same entries mistakenly refer to preparations for initial conferences when instead they seem to correspond to settlement conferences that this Court held.  The Court still included these hours despite the errors.

York, 626 F.3d 130, 132 (2d Cir. 2010)), report and recommendation adopted as modified, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); see New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1148 (holding that attorneys who apply for court-ordered compensation must document the application with "contemporaneous time records," which should specify, "for each attorney, the date, the hours expended, and the nature of the work done").

After examining the time records submitted by plaintiffs' counsel, the Court finds the 47.4 expended by plaintiffs' counsel in this case to be reasonable. Generally, the "high-end amount of hours spent on eases [sic] in a similar procedural posture (i.e., a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater). This case, however, was not a standard default because defendants had initially appeared and the parties had engaged in preliminary case and settlement conversations for months. Therefore, it does not appear that plaintiffs' attorney spent excessive amounts of time completing necessary tasks for the case, particularly given the fact that defendants actually prolonged the matter by filing an Answer and then by failing to maintain contact with their attorney, resulting in the adjournment of several conferences and delays while counsel was attempting to contact the clients and then while defendants were given time to find new counsel, only in the end to default. Thus, the Court finds that the time spent on this case by plaintiffs' attorney is reasonable. Indeed, courts have approved requests for higher numbers of hours in standard default cases.

3.   Calculation of Attorney's Fees

Based on the foregoing analysis, this Court respectfully recommends that plaintiff be awarded attorney's fees in the amount of $17,775, based on the hourly rate of $375 per hour and the 47.4 hours of time expenditures.

4.   Costs

Plaintiffs also request $563.00 in litigation costs expended during the course of this litigation.  (See Cooper Decl., Ex. F (providing invoices)).  Provisions of both the FLSA and the NYLL provide that plaintiffs may recover reasonable costs.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  In this Circuit, "only those costs that are tied to 'identifiable, out-of-pocket disbursements' are recoverable."  Jemine v. Dennis, 901 F. Supp. 2d at 394 (quoting Moon v. Gab Kwon, No. 99 CV 11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002)).  Here, the requested costs include the filing fee and the fees for service of process on the three defendants. (See Cooper Decl., Ex. F).  This Court generally approves requests that are reasonable and well-documented.  See, e.g., Kalloo v. Unlimited Mech. Co. of NY, Inc., 977 F. Supp. 2d 209, 214 (E.D.N.Y. 2013) (approving request for $9,276.36 in costs for filing fees, fees for service of process, and the costs of transcripts of depositions, since these costs were "supported by . . . contemporaneous records"); Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d at 211–12 (reducing a request for cost of electronic research, but finding that "taxable costs, such as filing and subpoena fees as well as monies expended by transcripts, printing, copying, and witnesses are shifted to the losing party").

The Court finds the requested costs for service and filing fees is reasonable, and respectfully recommends that plaintiff be awarded $563.00 in costs.

5.   <u>Post-Judgment Interest</u>

Finally, plaintiffs also seek post-judgment interest, pursuant to 28 U.S.C. § 1961, which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Under the statute, interest is calculated from the date of the entry of the judgment, at the weekly average 1-year constant maturity Treasury yield rate published by the Board of Governors of the Federal Reserve System for the preceding calendar week.  <u>Id.</u>; <u>see also</u> <u>Schipani v. McLeod</u>, 541 F.3d 158, 165 (2d Cir 2008) (noting that "postjudgment interest is governed by federal statute").  Thus, the Court recommends that the plaintiffs be awarded post-judgment interest.

<u>CONCLUSION</u>

In summary it is respectfully recommended that a default judgment enter against defendants Fusion Juice Bar Inc., Fusion Bar 3 Inc., and Florentino Ortega and that plaintiffs be awarded:  1) $13,035 to plaintiff C. Astudillo and $76,215 to plaintiff B. Astudillo, representing unpaid minimum wages and overtime pay; 2) $13,035 to plaintiff C. Astudillo in liquidated damages under the NYLL, and $76,215 to plaintiff B. Astudillo in liquidated damages under the NYLL; 3) $3.21 per day to plaintiff C. Astudillo in prejudgment interest from her midpoint date August 18, 2018 until the date of judgment, and $18.79 per day to plaintiff B. Astudillo in prejudgment interest from his midpoint date of July 7, 2017 until the date of judgment; 4) $17,775 in attorney's fees and $563.00 in costs; along with 5) post judgment interest.  It is also respectfully recommended that plaintiffs not be awarded an amount for unpaid spread of hours pay or for violations of the Wage Theft Prevention Act, since plaintiffs do not request any such damages in their submission.

Any objections to this Report and Recommendation must be filed with the Clerk of the

38

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within

the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v.

Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs are directed to serve a copy of this Report and Recommendation promptly by

certified mail on defendants and to provide the Court with proof of service.

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  March 23, 2023
        Brooklyn, New York

_Cheryl L. Pollak_
CHERYL L. POLLAK
United States Magistrate Judge
Eastern District of New York